IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-281- RAH |
| | ) | [WO] |
| ELMORE COUNTY | ) | |
| COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Michael Brown, a former pretrial detainee at the Elmore County Jail, complains that during his six-day detention he was subjected to excessive force and denied medical treatment for his serious physical injuries in violation of the Fourteenth Amendment to the United States Constitution.  He also asserts the Elmore County Commission breached its duty to provide adequate funding for medical care pursuant to Alabama Code §14-6-19. In his Third Amended Complaint,[1] Brown names as defendants: the County

---

[1] Brown also asserts claims against Quality Correctional Healthcare, Inc., the contract medical provider at Elmore County Jail. Because Brown filed a Fourth Amended Complaint (Doc. 84) on June 23, 2021, amending his claims against Quality Correctional Healthcare, Inc., those claims will be addressed in a subsequent opinion. The Fourth Amended Complaint did not supplant the Third Amended Complaint as it concerns the County Commission or Sheriff Franklin, therefore the Third Amended Complaint is the operative one as it concerns the County Commission and Sheriff Franklin's motions to dismiss.

Commission; Bill Franklin, Sheriff of Elmore County; and Eric Bell, an officer at the Elmore County Jail.

Pending before the Court are the Motions to Dismiss (Docs. 63, 65) filed by the County Commission and Sheriff Franklin.[2] Brown filed responses to these motions (Docs. 71, 72) and the defendants filed reply briefs (Docs. 76, 77). This matter is ripe for review.

## II.    FACTUAL ALLEGATIONS

Construing the well-pleaded factual allegations in the Third Amended Complaint as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows:

**A. Brown's Detention**

On April 18, 2019, Brown was arrested without a warrant and detained in the Elmore County Jail. (Doc. 58 at 4.) Shortly after his arrival at the jail, several officers escorted Brown to a cell that was not equipped with security cameras. There, he was forced to sit in a chair with his hands and feet restrained by straps. (*Id.*)  Defendant Eric Bell entered the cell, told Brown that he was "fixing to fuck [him] up," and proceeded to "punch Mr. Brown's face with tremendous force." (*Id.*)  Officer Bell struck Brown's face "with such great force that it caused Brown to suffer multiple

---

[2] Officer Bell answered the Third Amended Complaint, denying the allegations against him. (Doc. 62.)

fractures to his lower jaw," which caused "immediate and unbearable pain." (*Id.*) Following this incident, the officers took Brown to another holding cell.

Shortly thereafter, a nurse asked Brown "if she could do something for him" and after Brown requested she treat his fractured jaw, the nurse advised that she would bring him an ice pack. (*Id*. at 5.)  She never returned.  At some later point, a second nurse administered an x-ray of Brown's jaw. (*Id*.)  The x-ray image revealed Brown's jaw was indeed fractured. Despite these x-ray results, and despite his numerous requests for help, medical personnel provided no treatment for Brown's injuries or pain. (Doc. 58 at 5.) As a result, Brown alleges he "continued to suffer excruciating pain and mental and emotional distress" during his detention. (*Id*. at 6.)

When he was released on April 25, 2019, Brown immediately went to the Elmore Community Hospital to seek treatment for his broken jaw. (*Id*.) There, hospital staff confirmed that Brown suffered a multi-part, right-sided mandibular fracture for which he underwent surgery on April 29, 2019, which involved the implantation of screws, wires, and metal plates. Following this procedure, Brown's physician wired his mouth closed and prescribed medication for pain. (*Id*.)

Today, Brown continues to suffer from significant pain, emotional distress, mental anguish, and faces long-term complications including loss of sensation in the mandibular nerve, crooked teeth, and the loss of teeth in the areas where his jaw was fractured. (*Id*.)

## B. Brown's Claims

In his Third Amended Complaint, Brown brings the following claims:

(1) Sheriff Franklin and Officer Bell subjected him to excessive force in violation of the Fourteenth Amendment (Count One);

(2) Sheriff Franklin and the County Commission acted with deliberate indifference to his serious medical needs by delaying or denying medical treatment for his injuries in violation of the Fourteenth Amendment (Count Two)[3]; and

(3) The County Commission breached its duty to provide adequate funding for medical care pursuant to Ala. Code § 14-6-19 (Count Three).

## III.   LEGAL STANDARDS

## A. Motions to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."

---

[3] Brown also asserts this deliberate indifference claim against Defendant Quality Correctional Healthcare, Inc. Brown amended this claim in his Fourth Amended Complaint.

*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). [D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

**B. Due Process Claims**

The actions alleged in the Third Amended Complaint occurred while Brown was a pretrial detainee at the Elmore County Jail. Brown's claims are subject to review under the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). "[I]n regard

to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d at 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and the Eighth Amendment); *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that whether the alleged violation is reviewed under Eighth or Fourteenth Amendment is immaterial).

Additionally, most federal courts, including the Eleventh Circuit, apply the deliberate indifference standard in deciding claims of pretrial detainees challenging medical treatment and other conditions. *See, e.g., Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that a pre-trial detainee's claims challenging medical treatment provided to him "are evaluated under the same [deliberate indifference] standard as a prisoner's claim of inadequate care under the Eighth Amendment" and specifically refusing to extend the objective reasonableness standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *see also Smith v. Terry*, No. 2:13-CV-216-WHA, 2016 WL 4942066, at

*3 (M.D. Ala. Aug. 15, 2016), report and recommendation adopted, No. 2:13-CV-216-WHA, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016); *Larson v. Stacy*, No. 2:14-CV-01085-WMA-JHE, 2015 WL 5315500, at *6–9 (N.D. Ala. Sept. 10, 2015) (applying objective reasonableness standard to pretrial detainee's excessive force claims but deliberate indifference standard to medical care claims).

## IV.   DISCUSSION

The Court addresses Brown's claims against each defendant in turn.

## A. Elmore County Commission

Brown brings two claims for relief against the Elmore County Commission. First, in Count Two, Brown alleges that the County Commission violated the Fourteenth Amendment when it acted with deliberate indifference to his serious medical needs; here, his broken jaw and resulting pain.  Brown argues the County Commission's failure to provide any medical treatment "posed a substantial risk and resulted in a substantial risk of serious harm to Mr. Brown." (Doc. 58 at 11.)  Second, in Count Three, Brown contends that the County breached its statutory duty under Ala. Code § 14-6-19 to provide funding for adequate medical care when "no person at the Elmore County Jail provided [him] with any adequate and necessary medical treatment for his severe injuries for a period of six days while held in the Elmore

County Jail." [4] (Doc. 58 at 12.)  The County Commission seeks dismissal of both claims.

### 1. Deliberate Indifference

As to Count Two, the County Commission argues that Brown's deliberate indifference claim should be dismissed because he does not identify any individual representative of the County Commission whose actions could bind the Commission to liability; that is, any employee or representative of the County Commission who had knowledge of Brown's condition.  Further, the County Commission argues that it cannot be held liable for the actions of the Sheriff or for the operations within the jail and that, to the extent Brown attempts to connect a claim for inadequate funding to his injuries, the allegation is conclusory and lacks any factual support.

In *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288–1291 (11th Cir. 1998), the Eleventh Circuit, sitting *en banc,* addressed whether, in the context of a pretrial detainee's claim, "an Alabama county can be held liable under 42 U.S.C. § 1983 for injuries befalling a county jail inmate arising from the sheriff's management of the jail." The Court answered that question in the negative and noted that Alabama statutory authority delegates to sheriffs the daily operational authority of county jails. When engaged in that role, the Court continued, sheriffs are not county

---

[4] Brown also asserts a deliberate indifference claim within Count Three.  Specifically, he asserts "[t]he Elmore County Commission's breach of its statutory duties is also a deliberate indifference to Mr. Brown's serious medical needs in violation of the Fourteenth Amendment to the U.S. Constitution." (Doc. 58 at 13.)

policymakers for purposes of § 1983. *Turquitt*, 137 F.3d at 1289 ("The Alabama

Supreme Court has held that § 14-6-1 demonstrates that 'the sheriff's authority over

the jail is totally independent of the [county commission]." *King v. Colbert County*,

620 So. 2d 623, 625 (Ala. 1993)). And in matters related to the supervision of

detainees and operations of the county jails, Alabama sheriffs are state—not

county—officers, and a sheriff's authority is totally independent of the county

commission. *Turquitt*, 137 F.3d at 1289–90.

The Third Amended Complaint fails to attribute to the County Commission

any affirmative conduct or actual responsibility for the allegedly deficient medical

treatment of Brown's injury. As explained in *Turquitt:*

> A local government may be held liable under § 1983 only for . . . "acts
> which the [local government] has officially sanctioned or ordered."
> *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (internal
> citations omitted). [W]e first look to the analysis of the Supreme Court
> in *McMillian v. Monroe County*, 520 U.S. 781 (1997), in which the
> Court considered whether an Alabama sheriff was a state or a county
> policymaker for § 1983 purposes when engaged in law enforcement
> activities. To evaluate whether a local government is liable under §
> 1983, a court must "identify those officials or governmental bodies who
> speak with final policymaking authority for the local government actor
> concerning the action alleged to have caused the particular
> constitutional or statutory violation at issue."

*Turquitt*, 137 F.3d at 1287. A comprehensive review of relevant Alabama law,

"including state and local positive law, as well as custom and usage having the force

of law," served to "persuade[]" the *Turquitt* Court "that an Alabama sheriff acts

exclusively for the state rather than for the county in operating a county jail." *Id.* at

1288.  Thus, to the extent Brown seeks liability against the County Commission for jail operations or for the assault on Brown, the operative complaint fails to state a claim and the County Commission's motion is due to be granted.

Further, in Count Two, Brown has not sufficiently alleged a policy, custom, or practice that supports liability. "[A] county is liable only when the county's 'official policy' causes a constitutional violation." *Grech v. Clayton, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Such a policy may be established through "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.* "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

In Count Two, Brown alleges that his constitutional injury was the result of the County Commission's deliberate indifference to his serious medical needs despite the County Commission's knowledge and awareness of his injury.  In other words, Count Two is a direct liability claim against the County Commission, which, as discussed above, cannot proceed.  In other areas of his Third Amended Complaint, Brown vaguely references a custom and policy of denying medical treatment "to avoid liability or responsibility for the medical bills and expenses of" pretrial detainees. (Doc. 58 at 7.) But the allegations within Count Two place at issue the

County Commission's knowledge and awareness under a directly liability theory. *See Marsh v. Butler County,* 268 F.3d at 1026. And under that theory, Count Two fails to sufficiently state a claim against the County Commission.

To the extent Brown claims that the County Commission bears responsibility for ensuring that procedures are in place for detainees to receive medical care, Brown again runs into a problem, as reflected by the holding in *Marsh v. Butler County*:

> [U]nder Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a "limited role in building and funding the jails." Therefore, the county is not a responsible party for the alleged tort of deliberate indifference to Owens's medical needs. This claim was properly dismissed against the County.

268 F.3d 1014, 1026 at n.6 (11th Cir. 2001) (internal citations omitted).

Brown attempts to circumvent *Turquitt* and *Marsh* by underscoring the County Commission's statutory duties to fund jail operations, including detainee medical care and staff training to render such care. This argument is unavailing. Alabama statutes do impose duties on county commissions to erect and maintain county jails, but as noted in *Turquitt,* "these statutes are entirely consistent with the counties' limited role in building and funding the jails and do not imply or impart any control over the jails' operation." 137 F.3d at 1290. *See also Gaines v. Choctaw County Com'n,* 242 F. Supp. 2d 1153, 1162 (S.D. Ala. 2003) ("While the County does have a duty to maintain its jail, that duty does not extend to the medical care of prisoners."). Count Two is due to be dismissed against the County Commission.

## 2. Statutory Duty to Fund Medical Care

Count Three of the Third Amended Complaint alleges that the County Commission violated state law when it breached its statutory duty to adequately fund medical care at the Elmore County Jail. Brown cites Ala. Code § 14-6-19 (1975) to support his position. Brown argues that his allegations that medical staff failed to ensure he was seen by a medical provider or send him to an outside doctor put the County Commission's duty to fund and maintain the jail at issue. His claims, however, can proceed only upon factual allegations that demonstrate a duty, a breach, *and* causation as to the injury claimed.

But Brown does not support his claim with well-pleaded factual allegations. Instead, he offers conclusory allegations that the County Commission breached the duty it owed to fund medical care and adequate staffing. He fails to provide—in either his factual allegations or the asserted legal claims in Counts Two and Three—the "causation" element specific to the County Commission's funding decisions or policies. He does not sufficiently allege that there was indeed inadequate funding or make any factual assertions as to how this allegedly deficient funding resulted in the denial or delay of medical care, such as, for example, insufficient staffing or lack of proper equipment and supplies to treat Brown's injuries.

Without further factual support, Brown's bare assertion that the County Commission failed to adequately fund medical care at the Elmore County Jail is

insufficient to support his claim in Count Three. Accordingly, Count Three is likewise due to be dismissed against the County Commission.

## B. Sheriff Bill Franklin

Brown asserts § 1983 claims for excessive force and deliberate indifference to serious medical needs against Sheriff Franklin in his individual capacity. Sheriff Franklin filed a motion to dismiss (Doc. 65) in which he contends that the Third Amended Complaint fails to state a § 1983 claim on which relief may be granted and that Sheriff Franklin is entitled to qualified immunity.

At the motion to dismiss stage, the Rule 12(b)(6) standard and the qualified immunity defense become intertwined. *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995). As such, the Third Amended Complaint is due to be dismissed as to Sheriff Franklin if it fails to state a claim against him on which relief may be granted. Fed. R. Civ. P. 12(b)(6).

Likewise, qualified immunity immunizes Sheriff Franklin from liability if the Third Amended Complaint fails to state a violation of a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted). "As the Supreme Court states, '[a] necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is "clearly established" at the time the defendant acted is the determination of whether the

plaintiff has asserted a violation of a constitutional right at all.'" *Wooten*, 49 F.3d at 699 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

"Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks omitted); *see also Williams v. Board of Regents of Univ. Sys. Of Ga.,* 477 F.3d 1282, 1300 (11th Cir. 2007).  "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority."  *Skop v. City of Atlanta, Ga*., 485 F.3d 1130, 1136 (11th Cir. 2007).

Here, it is generally undisputed that Sheriff Franklin was acting within his discretionary authority because the Third Amended Complaint makes clear that he was acting in his supervisory capacity as sheriff during the events made the basis of the suit. *See Holloman ex rel. Holloman,* 370 F.3d at 1265 (government official acts within scope of his discretionary authority when "(a) performing a legitimate job-related function . . . (b) through means that were within his power to utilize.").

14

Therefore, the question here is whether, "[t]aken in the light most favorable to the party asserting the injury, [. . .] the facts alleged show the [defendant's] conduct violated a constitutional right," and if so, whether the right is clearly established. *Gonzalez*, 325 F.3d at 1234 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Brown asserts that Sheriff Franklin violated his Fourteenth Amendment rights by subjecting him to excessive force and because Sheriff Franklin was deliberately indifferent to Brown's serious medical needs.

## 1.  Excessive Force

Brown's claims against Sheriff Franklin in Count One stem from the assault committed by Officer Bell. The Third Amended Complaint alleges that Sheriff Franklin "knew or should have known and failed to prevent" Bell's conduct and that Sheriff Franklin directed Bell to strike Brown. (Doc. 58 at 10.) Though not entirely clear from the language of the Third Amended Complaint, Brown's allegations appear to assert a claim against Sheriff Franklin in his role as Bell's supervisor.

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Id.* (internal quotation marks omitted). "Supervisory liability lies

15

where the defendant personally participates in the unconstitutional conduct or there

is a causal connection between such conduct and the defendant's action." *Harper*,

592 F.3d at 1236. There are three ways to establish such a causal connection:

> [W]hen a history of widespread abuse puts the responsible supervisor
> on notice of the need to correct the alleged deprivation, and he fails to
> do so. Alternatively, the causal connection may be established when a
> supervisor's custom or policy . . . result[s] in deliberate indifference to
> constitutional rights or when facts support an inference that the
> supervisor directed the subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop them from doing
> so.

*Id.* (ellipsis and second alteration in original) (quoting *Cottone*, 326 F.3d at 1360).

With these standards in mind, the Court finds that Brown has failed to sufficiently

allege a claim for supervisory liability.

In his Third Amended Complaint, Brown asserts only conclusory allegations

against Sheriff Franklin in his role as Bell's supervisor. The complaint alleges that

Sheriff Franklin knew or should have known Bell had a history of using excessive

force against jail detainees but failed to stop this behavior. But that is the extent of

this allegation. There is no further explanation as to any prior instances of Bell

abusing inmates, when these incidents may have occurred, or facts that would show

Sheriff Franklin was made aware of any past abuse. There is likewise no sufficient

allegation that Sheriff Franklin implemented any policy or custom of allowing or

encouraging Bell or other jail employees to physically assault detainees.

Brown does, however, allege that Sheriff Franklin directed Officer Bell to

strike Brown. (Doc. 58 at 10.) Specifically, the Third Amended Complaint alleges that Officer Bell acted "at the direction or instruction of Defendant Sheriff Franklin." (Doc. 58 at 10.)

The problem with this allegation is that it has absolutely no factual support. Brown offers no additional factual allegations to bolster his contention that Sheriff Franklin directed Bell to strike Brown. He doesn't allege, for example, what specific direction Sheriff Franklin gave to Bell or when it was allegedly given. Bare conclusory allegations such as this one are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Without more, Brown's conclusory statement is insufficient to state a plausible claim that Sheriff Franklin violated Brown's constitutional right to be free from excessive force.

The Third Amended Complaint does not sufficiently allege an excessive force claim against Sheriff Franklin in his capacity as Bell's supervisor. As a result, Count One is due to be dismissed against Sheriff Franklin.

### 2. Deliberate Indifference

In Count Two, Brown alleges Sheriff Franklin was deliberately indifferent to Brow's serious medical needs. As against a defendant in his individual capacity, there are two types of claims for deliberate indifference—one for personal participation and one for supervisory liability. *Harper v. Lawrence County, Alabama*, 592 F.3d 1227, 1233 (11th Cir. 2010). The Court discusses both in turn.

### a. Personal Participation

In Count Two, Brown alleges that he suffered from an objectively serious medical need and that Sheriff Franklin acted with deliberate indifference to that need and caused further injury to Brown. *Id*. at 1234.

An objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Such medical need must be one that, if left unattended, poses a substantial risk of serious harm. *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

"Deliberate indifference" requires that the defendant (1) have subjective knowledge of a risk of serious harm, (2) disregard such risk, and (3) act with more than gross negligence. *Harper*, 592 F.3d at 1234. Intentional refusal to provide medical care may constitute deliberate indifference. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). And a delay in access to medical care has also been recognized to constitute deliberate indifference. *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995).

Sheriff Franklin does not dispute that Brown suffered from a serious medical condition, although he does dispute the assertion that Brown was not afforded medical care because, even by Brown's own admission, Brown was seen by a nurse

and received an x-ray of his jaw.  The dispositive issue, then, is whether Brown has sufficiently pleaded that Sheriff Franklin had subjective knowledge that Brown was in need of medical treatment beyond what Brown actually received.

"Subjective knowledge" requires the defendant be aware of facts from which the inference could be drawn that a substantial risk of harm exists and that the defendant actually draw such inference. *Id.* "Subjective knowledge can be shown through circumstantial evidence." *Finn v. Haddock*, 459 F. App'x 833, 836 (11th Cir. 2012) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). However, "[n]o liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Burnette*, 533 F.3d at 1331 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Thus, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette*, 533 F.3d at 1325.

Brown does not allege Sheriff Franklin had any contact with Brown during his six-day detention. Nor does he otherwise allege how Sheriff Franklin knew or could have actually known Brown had a serious medical need that posed a substantial risk of serious harm if left untreated. Because Brown fails to allege any facts to support an allegation that Sheriff Franklin had subjective or actual knowledge of a serious harm to Brown, the Third Amended Complaint fails to state a personal participation claim against Sheriff Franklin for deliberate indifference.

19

### b. *Supervisory Liability*

As noted earlier, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is "extremely rigorous." *Cottone*, 326 F.3d at 1360 (internal quotation marks omitted).  As with the excessive force claim, to adequately allege a deliberate indifference claim against Sheriff Franklin, Brown must show either a history of widespread abuse, a custom or policy, or that Sheriff Franklin directed a subordinate to act unlawfully.

The Third Amended Complaint only broadly alleges a causal connection between customs, policies, and training at the Elmore County Jail and the resulting harm to Brown.  Specifically, the Third Amended Complaint alleges, *inter alia*, that in order to control costs, Sheriff Franklin established a custom or policy of denying or delaying medical treatment for serious health conditions and established a custom or policy of not using outside medical providers and emergency medical resources when needed for serious health conditions.

But "[d]emonstrating a policy or custom requires showing a persistent and wide-spread practice." *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007) (internal quotation marks omitted). Other than a vague reference to policies and customs, Brown's Third Amended Complaint does not identify any specific policy or custom, nor does it detail any other incidents where medical care was delayed or denied to pre-trial detainees at the Elmore County Jail, or allege that Sheriff Franklin

directed medical staff to delay or withhold treatment. Such conclusory allegations are insufficient to support a claim that Sheriff Franklin was deliberately indifferent to Brown's constitutional rights. Sheriff Franklin is, therefore, entitled to qualified immunity and the claims against him are due to be dismissed.

## V.    CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1. The Motion to Dismiss (Doc. 63) filed by Defendant the Elmore County Commission is GRANTED;

2. The Motion to Dismiss (Doc. 65) filed by Defendant Sheriff Bill Franklin is GRANTED; and

3. The claims against the Elmore County Commission and Sheriff Bill Franklin are DISMISSED with prejudice.[5]

This action will proceed against Defendants Eric Bell and Quality Correctional Healthcare, Inc. The Motion to Dismiss (Doc. 85) filed by Quality Correctional Healthcare, Inc. will be addressed in a subsequent opinion.

DONE this the 14th day of March, 2022.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because Brown has had numerous opportunities to correct his pleading deficiencies—after all, the motions discussed in this order concern Plaintiff's *Third* Amended Complaint—dismissal with prejudice is proper. *See Est. of Cosio v. Alvarez*, 181 F. App'x 894, 896 (11th Cir. 2006) (finding dismissal of civil rights complaint with prejudice for failure to state a claim was proper where plaintiffs had already been given an opportunity to amend their complaint once).