IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:20-CV-281- RAH |
| ) | [WO] |
| ERIC BELL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 lawsuit arose following an incident that occurred during Plaintiff Michael Brown's six-day detention at the Elmore County Jail. According to Brown, while he was physically restrained to a chair inside a jail cell, Defendant Officer Eric Bell punched him in the face, breaking his jaw in several places. Despite his obvious injuries and repeated requests for medical care, Brown claims that he received necessary treatment only after his release from custody.

Pending before the Court is Defendant Quality Correctional Healthcare, Inc.'s (QCHC) Motion to Dismiss.[1] (Doc. 85.) The motion has been fully briefed (Docs. 89, 90) and this matter is ripe for review.

---

[1] The Fourth Amended Complaint also names as defendants two fictitious parties identified as Nurses One and Two. In its motion to dismiss, counsel for QCHC attempts to enter a limited appearance for these two unidentified and unserved fictitious individuals. Fictitious party practice generally is not permitted or recognized in federal proceedings. *See, e.g., New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997); *Richardson v.*

## II.     FACTUAL ALLEGATIONS

The Fourth Amended Complaint[2] (Doc. 84) alleges in pertinent part as follows:

On April 18, 2019, Brown was arrested and placed in the Elmore County Jail. (Doc. 84 at 5.) Shortly after arriving, officers escorted Brown to a cell, strapped him to a chair, and Officer Bell punched Brown in the face "with such great force that it caused Brown to suffer multiple fractures to his lower jaw," and resulted in "immediate and unbearable pain." (*Id.*)

A nurse employed by QCHC attended to Brown shortly thereafter. Brown told the nurse that he had "suffered a broken jaw and was in severe pain," and then he requested that she "treat his fractured jaw and provide him with necessary medication." (*Id*. at 6.) The nurse responded that she would bring Brown an ice pack, but she never brought the ice pack and never provided Brown with any medical treatment whatsoever. (*Id*. at 6.)

---

*Johnson,* 598 F.3d 734, 738 (11th Cir. 2010); *see also Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992)(recognizing limited exception to general rule); *Moulds v. Bullard,* 345 F. Appx 387, 390 (11th Cir. 2009)(same). The motion to dismiss filed on behalf of these two individuals will be ignored and these individuals will be stricken from the case as defendants. If Brown later amends the operative complaint to add these individuals by name, defense counsel can at that point file a motion to dismiss on their behalf. To do so now, is grossly premature.

[2] On June 23, 2021, Brown filed a Fourth Amended Complaint (Doc. 84) that amended only his claims against QCHC. The Court previously granted a motion to dismiss Brown's Third Amended Complaint against the Elmore County Commission and Sheriff Bill Franklin. (Doc. 91.)

Instead, a second nurse brought an x-ray machine to Brown's cell to x-ray his jaw. This x-ray image revealed that he indeed had a broken jaw. (*Id*.) This was the full extent of QCHC's response to Brown's condition. (*Id*.)

As a result of QCHC's failure to provide further treatment, Brown alleges that he continued to suffer "very severe pain, terrible headaches, facial swelling, bleeding from his mouth, breathing difficulties, serious pain when he attempted to eat and drink, jaw stiffness and numbness, facial bruising and dental-related pain and numbness" for the remainder of his detention. (*Id*. at 7.)

Brown was released from custody on April 25, 2019. (*Id*. at 7.) Immediately upon his release, Brown traveled to the Elmore Community Hospital to seek treatment for his broken jaw. (*Id*.) There, hospital staff promptly diagnosed Brown with a multi-part, right-sided mandibular fracture and he underwent surgery four days later, which included the implantation of screws, wires, and metal plates. (*Id*. at 8.) Brown's physician also prescribed medication for pain. (*Id*.)

Today, Brown continues to suffer from significant pain, emotional distress, and mental anguish, and faces long-term complications including a loss of sensation in the mandibular nerve, crooked teeth, and the loss of teeth. (*Id*.)

### III.   STANDARD OF REVIEW

Because QCHC's motion to dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts Brown's well-pleaded factual allegations as true, *Hishon*

*v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the operative complaint in Brown's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of the pleadings, the Court is guided by a two-prong approach: (1) the Court is not bound to accept conclusory statements of the elements of a cause of action and (2) where there are well-pleaded factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must instead contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## IV.    DISCUSSION

The Fourth Amended Complaint advances two claims against QCHC: deliberate indifference and breach of contract. QCHC moves to dismiss both claims. As to the deliberate indifference claim in Count Two, QCHC argues that the Fourth Amended Complaint fails to comply with federal pleading standards in that it does not contain sufficiently specific factual allegations. And as to the breach of contract

4

claim in Count Four, QCHC argues the claim fails because of a lack of privity of contract and because Brown cannot claim third-party status under the contract between QCHC and the Elmore County Commission. QCHC's motion is due to be granted as to both claims. The Court addresses each in turn.

### A. Deliberate Indifference

QCHC's motion is due to be granted as to the claim for deliberate indifference in Count Two. Brown alleges that QCHC acted with deliberate indifference to his serious medical needs by adopting a policy or custom of delaying or withholding medical care in an effort to control or minimize costs. Brown alleges that as a result of this policy or custom, QCHC failed to provide him with medication and otherwise treat his broken jaw, something outside medical providers did as soon as Brown was released from the Elmore County Jail.

QCHC responds that Brown's claim should be dismissed because the Fourth Amended Complaint fails to plead sufficient facts to support the existence of a policy or custom of denying care because of cost considerations.

As reflected in the Fourth Amended Complaint, QCHC is a private entity that provides medical services for detainees and inmates in the Elmore County Jail. A private entity providing medical services pursuant to a contract with a county is only liable under § 1983 where it employs a custom or policy that results in deliberate

indifference to an inmate's serious medical need.³ *See, e.g., Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *Howell*, 922 F.2d at 724 n. 13; *Green v. Preemptive Forensic Health Solutions*, No. 6:14–CV–01402–LSC, 2015 WL 1826191, at *3 (N.D. Ala. April 21, 2015) (citing *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)). The challenged policy or custom need not be express, but a plaintiff must specifically identify which policy or custom, if any, caused his injuries. *Massey v. Quality Correctional Healthcare, Inc.*, No. 2:12-cv-101-WHA, 2015 WL 852054 *6 (M.D. Ala. 2015).

A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Whereas a custom is any practice that is "so settled and permanent" as to carry the force of law. *Id.* To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury, and instead, must reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show a practice is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce sufficient evidence of a "series of constitutional violations from which

---

³ Because he was a pretrial detainee, Brown's rights arose under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). Nonetheless, the Court engages in the same analysis.

deliberate indifference can be inferred." *Id.* (quoting Estate of *Novack ex rel. Turbin v. Cty. Of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

The Fourth Amended Complaint alleges that on April 18, 2019, Officer Bell broke Brown's jaw with a punch to the face, causing Brown severe and unbearable pain. Brown alleges he repeatedly complained to and requested treatment from QCHC medical staff. He further alleges that over the course of the next few days, he suffered severe pain, terrible headaches, facial swelling, bleeding from his mouth, breathing difficulties, stiffness, numbness, and facial bruising. Despite his complaints, and despite an x-ray confirming Brown suffered a broken jaw, QCHC's medical staff provided no medical treatment whatsoever; only the promise of an ice pack that was never provided. Brown's injuries were assessed and treated only after his release from custody on April 25, 2019. Brown alleges that QCHC "opted to deny and delay treatment" because of a policy and custom of denying medical care to detainees and inmates "in order to avoid additional costs to itself and/or Elmore County and/or the Sheriff." (Doc. 84 at 9, 10.)

Brown's allegations that QCHC denied and delayed medical treatment in an effort to avoid costs is conclusory and without factual support. Brown does not allege any other incidents where QCHC denied or delayed treatment to Elmore County Jail detainees sufficient to set forth a "series of constitutional violations from which deliberate indifference can be inferred." *McDowell*, 392 F.3d at 1290. Nor

7

has Brown asserted any facts to support his claim that QCHC's failure to treat Brown's broken jaw was the result of a policy or custom of avoiding costs rather than, for example, mere negligence, a failure to adequately staff the medical department, or a failure to train medical staff.

Absent factual support to bolster his allegations, the Court cannot accept as true Brown's conclusory statement that QCHC had a policy of delaying or denying care in an effort to avoid costs. *See Allen v. Geo Grp., Inc.*, No. 20-cv-00179-MEH, 2020 WL 5500454, at *3-4 (D. Colo. Sept. 11, 2020) (finding allegations regarding prison healthcare providers' "improper policies" to be conclusory, and thus, insufficient to establish liability under § 1983, where the complaint merely alleged that "[it] was Defendants' policy, custom, or practice to make inmates suffer by not providing adequate medical care[,] ... [and] to deny medical care even when objective signs and symptoms warranted additional care"); *Lee v. Turn Key Health Clinics, LLC*, No. 19-CV-00318-GKF-JFJ, 2020 WL 959243, at *7 (N.D. Okla. Feb. 27, 2020) ("The Complaint includes no allegations from which the court may infer that those specific cost-saving measures caused the asserted constitutional violations."). Without factual support, Brown's single allegation that QCHC had a policy of withholding treatment to save costs is not enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Brown's factual contentions in Count Two fail to plausibly plead that any

8

cost-saving policy was the moving force behind the alleged constitutional violation here. The deliberate indifference claim against QCHC is due to be dismissed.

### B. Breach of Contract

Brown's breach of contract claim in Count Four is premised upon the Health Services Agreement between Elmore County and QCHC. (*See* Doc. 84-1.) The Fourth Amended Complaint alleges that QCHC breached its contractual duty to provide adequate medical care and medicines to pre-trial detainees, like Brown. (Doc. 84 at 11-14.)  QCHC argues that the claim, and any associated breaches of contractual duties, should be dismissed because Brown is neither a party to the Health Services Agreement nor an intended or third-party beneficiary.  This Court's review of the Health Services Agreement, which Brown attached to his Fourth Amended Complaint, confirms QCHC's contentions.

 First, Brown is not a party to the contract, and it does not appear that he attempts to invoke liability on that basis. Instead, Brown argues that he is an intended third-party beneficiary because the duties under the Health Services Agreement were intended to benefit detainees like Brown and therefore, QCHC's breach of those duties harmed Brown.

But under Alabama law, "a third person has no rights under a contract between others unless the contracting parties intend that the third person receive direct benefit enforceable in court as opposed to an incidental benefit." *Fed. Mogul Corp. v.*

*Universal Constr. Co.*, 376 So. 2d 716, 723-24 (Ala. Civ. App. 1979). And that intent is founded in the language of the contract itself, which must be plain and unambiguous. *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002). When that language reflects that the "two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy." *Fed. Mogul Corp.*, 376 So. 2d at 724.

Here, Section 10.8 of the Health Services Agreement expressly provides that "[t]he parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof." (Doc. 84-1 at 13.)  Similarly, the Amendment to the Health Services Agreement executed October 11, 2016, states that "[t]he provisions of this Amendment and of any other documents to be executed and delivered hereunder are and will be for the benefit of the parties hereto and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Amendment or of the other documents to be executed and delivered hereunder." (Doc. 84-1 at 19.)

These contract provisions unambiguously indicate that the contracting parties intended no third party to have a legally enforceable right under the Health Services

Agreement. Thus, as a matter of Alabama law, Brown cannot claim third-party beneficiary status under the Health Services Agreement as the basis for a breach of contract claim. *See, e.g.*, *Brown v. Gadsden Regional Medical Center LLC*, 748 F. Appx 930 (11th Cir. 2018) (affirming dismissal of breach of contract claim against medical provider because claimant had no standing due to express contractual language). Count Four is due to be dismissed.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1. The Motion to Dismiss (Doc. 85) filed by Defendant Quality Correctional Healthcare, Inc. is GRANTED;

2. The claims against Quality Correctional Healthcare, Inc. are DISMISSED;

3. Fictitious Defendants Nurse One and Nurse Two are STRICKEN as defendants in this action;

4. This case shall proceed against Defendant Eric Bell under the Third Amended Complaint.

DONE, on this the 14th day of March, 2022.

                                            /s/ R. Austin Huffaker, Jr.
                                       R. AUSTIN HUFFAKER, JR.
                                       UNITED STATES DISTRICT JUDGE